NORTHERN DISTRICT OF TEXAS
FILED
MAR 26 2015
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARSHA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:13-CV-994-A |
| | § | |
| INNOVATE LOAN SERVICING CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above-captioned action the motion for summary judgment filed by defendant, Innovate Loan Servicing Corporation. Plaintiff, Marsha Williams, filed a response, to which defendant replied. Having now considered the motion, the response, the reply, the entire summary judgment record, and the applicable legal authorities, the court concludes that defendant's motion for summary judgment should be granted in part and denied in part.

I.

Plaintiff's Claims

Plaintiff initiated this action by filing her complaint on December 17, 2013. She pleaded that she was subjected to a sexually hostile work environment by being sexually harassed by her former supervisor, Joe Acuna ("Acuna"), and defendant's Chief

Executive Officer, Preston Miller ("Miller"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Texas Commission on Human Rights Act, Tex. Labor Code §§ 21.001 - 21.556 ("TCHRA"), and that, in violation of Title VII and the TCHRA, she was terminated and her performance was unfairly criticized because of her complaints about the sexual harassment.

II.

Grounds of the Summary Judgment Motion

Defendant moved for summary judgment on the grounds that it is entitled to judgment as a matter of law because all of plaintiff's claims lack merit. First, defendant argued that plaintiff's claim that she was subjected to a sexually hostile work environment in violation of Title VII and the TCHRA fails because (1) the alleged conduct by Acuna was not severe or pervasive, (2) the company's prompt remedial action with regards to Acuna defeats her claim, (3) the actions of Miller do not constitute actionable harassment because it was not unwelcome, or severe or pervasive, and (4) her failure to report harassment by Miller precludes her claim. In response to the retaliation claims, defendant argued that the claims fail because (1) plaintiff cannot show she suffered an adverse employment action other than being terminated, (2) she cannot establish a causal

2

connection between her sexual harassment complaint and her termination, and (3) she has presented insufficient evidence in support of her claim that defendant's decision to terminate her was pretext.

### III.

### Analysis

A.  Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its

3

case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "Unsubstantiated assertions of an actual dispute will not suffice." Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions
> could not, as a whole, lead a rational trier
> of fact to find for the nonmoving party,
> there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[1] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the

---

[1] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court could enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

4

non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B.  Plaintiff's Hostile Work Environment Claims

    1.  Summary Judgment Evidence Most Favorable to Plaintiff as to the Hostile Work Environment Claims

The court is providing a summary below of the evidence in the summary judgment record upon which plaintiff relies in support of her hostile work environment claims.

On May 30, 2012, while she and Acuna were alone in his office, Acuna asked plaintiff "are your boobes [sic] real" and "can I touch them."[2] Def.'s App. at 143. Plaintiff's written sexual harassment complaint stated that she responded that she did not date coworkers, and that he then replied, "I can make it easy for you or I can make it hard for you." Id. Acuna made a "snide remark" to plaintiff during the sexual harassment investigation, and once "said something very ugly" in an elevator, though she could not remember if it was of a sexual nature. Id. at 25:15-25 — 26:5 and 31: 15-20.

---

[2] Plaintiff's written complaint of sexual harassment dated July 10, 2012, utilized the word "boobes [sic]," but her deposition testimony was that Acuna used the word "titties." Def.'s App. at 6:15-24.

Plaintiff first met Miller on Halloween in 2011, approximately one month after she began working for defendant on September 28, 2011. On Halloween, while she was dressed as a Barbie doll, Miller asked her if she was going to be a trick or a treat. She "laughed it off." Id. at 38: 2. Shortly thereafter, they began texting one another. The record includes text message conversations from November 2, 2011 until May 4, 2012. Plaintiff produced all of the messages from her phone and did not delete any, though her phone may have done so automatically. No text messages were sent after May of 2012. Plaintiff initiated all of the text message conversations included in the record. After Halloween, but "way before" her complaint against Acuna, Miller saw a photo of her wearing a see-through lace shirt while she was showing the photo to a female coworker. Id. at 34: 6. Upon seeing the photo, Miller commented that it would look better if plaintiff was not wearing a bra. Miller made other "little flirt comments," but plaintiff could not remember them. Id. at 38:24 - 25. Miller would frequently stop at plaintiff's desk, and kneel beside her or put a hand on her shoulder.

2.  <u>Viewed Most Favorably to Plaintiff, the Evidence Does Not Support a Hostile Work Environment Claim</u>

In <u>Woods v. Delta Beverage Group, Inc.</u>, the United States Court of Appeals for the Fifth Circuit set forth the elements of a Title VII hostile work environment claim:

> In order to establish a hostile working environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

274 F.3d 295, 298 (5th Cir. 2001). The TCHRA "is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964." <u>Hoffmann-La Roche Inc. v. Zeltwanger</u>, 144 S.W.3d 438, 445 (Tex. 2004). For that reason, "federal case law may be cited as authority in cases relating to the Texas Act." <u>Id.</u> at 446.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." <u>Harvill v. Westward Commc'ns, LLC</u>, 433 F.3d 428, 434 (5th Cir. 2005) (alteration in the original). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and

7

subjectively offensive, meaning that the victim perceived it to be so." Id. In determining "whether an environment is sufficiently hostile or abusive" courts should look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998) (citation and internal quotation marks omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in terms and conditions of employment, and the Courts of Appeals have heeded this view." Id. at 788; see also, Shepherd v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871, 874 (5th Cir. 1999) (holding that comments, while "boorish and offensive" were not sufficiently severe, and neither were intermittent stares and arm touching).

Even if plaintiff's complaints of actions and comments by Acuna and Miller are taken as true, they were not sufficiently severe or pervasive to create a hostile work environment. Plaintiff has made no allegations that the conduct of which she complains affected her work performance or that it was humiliating. Furthermore, even if these comments were made and

8

the actions and text messages of Miller did occur, such conduct was not frequent, but rather isolated in nature. In light of the foregoing case law, the complained-of conduct, even if taken as true, is not sufficiently extreme to conclude that plaintiff was subjected to a hostile work environment under Title VII or the TCHRA. Therefore, the motion for summary judgment should be granted as to these claims.

C.  Plaintiff's Retaliation Claims

   1.  Summary Judgment Evidence Pertinent to the Retaliation Claims

On May 30, 2012, plaintiff was called into a meeting between herself, Acuna, and Warren. During this meeting, Acuna expressed concerns about plaintiff's work performance. Warren stated that he had no concerns about plaintiff's performance, but did discuss attendance concerns. Plaintiff's testimony was that she disputed the attendance concerns raised by Warren in that meeting. Approximately fifteen minutes after such meeting, plaintiff was allegedy called back into Acuna's office where he allegedly made the previously discussed sexually harassing statements.

There is evidence that on June 4, 2012, plaintiff was issued a counseling record for substandard performance, attendance issues, and tardiness. However, that document is unsigned, and plaintiff contests the validity of such. The record also

contains an email chain from June 11, 2012, wherein plaintiff's team lead, Ramirez, expressed shock at plaintiff's lack of knowledge of a particular job task.

Plaintiff then called the ADP TotalSource hotline on June 18, 2012, to make a report of sexual harassment against Acuna. She also reduced her complaint to writing, which was dated July 10, 2012. Following her complaint, an investigation was commenced by Jodi Kaufman ("Kaufman") who is an ADP TotalSource Human Resources Business Partner. Following her investigation, Kaufman recommended that Acuna be terminated, which he was, on July 31, 2012, though the harassment claim could not be substantiated. Kaufman's affidavit stated that no one else complained of sexual harassment by Acuna, but they did complain that Acuna "could be an abrasive and challenging supervisor to work for and had a temper at times in the workplace . . . ." Def.'s App. at 106, ¶ 8.

Another unsigned counseling record was allegedly issued on July 24, 2012, for absenteeism. Plaintiff contests its validity, but did admit someone discussed with her the fact that she left work at 2:40 p.m. when she was scheduled to work until 7:00 p.m., as mentioned in the counseling record. She testified that such absence was cleared with Warren, who was not her supervisor at the time. There were statements in the alleged counseling record

that plaintiff had unscheduled absences on June 4, 2012 and July 23, 2012, and that she was cautioned about start of workday tardiness and tardiness from breaks and lunchtime. On August 3, 2012, plaintiff received a counseling record for taking a nineteen minute break, which should have been no more than fifteen minutes, and for taking an eight minute restroom break, which should have been no more than five minutes. Such counseling record is signed.

At some point, the exact date of which is unclear, plaintiff allegedly told Warren that Miller "was . . . awful flirty." Id. at 44:16-17. This conversation presumably happened while Warren was plaintiff's team lead. Warren's declaration stated that he told Selena Chung, who replaced Acuna after his termination, about plaintiff's complaint regarding Miller. The nature and date of such conversation is also unclear.[3]

In her charge of discrimination filed with the Fort Worth Human Relations Commission and the Equal Employment Opportunity Commission, plaintiff alleged that on or about September 4, 2012, Miller told her that "[she] could keep her job if [she] did not file sexual harassment against him." Id. at 108. However,

---

[3] Defendant has moved to strike portions of the declaration of Warren. Rather than rule on such objections, we simply give the affidavit the effect it deserves in ruling on the motion for summary judgement.

11

plaintiff's deposition testimony was that Miller told her that if she dropped her sexual harassment case she could stay.

Plaintiff and five other employees were terminated on September 6, 2012, through what defendant contends was a reduction in force. Tim Rios (Rios) was allegedly the decision-maker for the reduction in force. His affidavit stated that he evaluated the eligible employees "on the basis of job performance, attendance, punctuality, job knowledge and interpersonal skill level," and that plaintiff was chosen because she "demonstrated inability to perform job tasks, [had] poor attendance, and lacked punctuality, job knowledge and interpersonal skills." Id. at 102. All of the employees involved in the reduction also "received a disciplinary incident within the last 30 days (either a written or verbal warning.)" However, Warren's declaration stated that Miller gave Rios a list of Collectors who would be laid off, and that the list included plaintiff. Miller denied this allegation and testified in his deposition that he did not know who was laid off until after they were terminated. Presumably prior to the reduction in force, someone filled out an "RIF Business Rationale Report." Rios's testimony is that he only saw a draft of the document, though his name is typed at the bottom of the form. He denies knowledge of plaintiff's sexual harassment complaint. One of the document's

12

questions was "[a]re the employees recommended for layoff in a protected class, or have the employees recently engaged in any protected activity . . . ?" Id. at 112. Beside plaintiff's name is typed "[b]lack; in July 2012 initiated complaints alleging sexual and racial harassment. Complaints were investigated and satisfactorily resolved." Id.

    2. <u>The Court is Unwilling at this Time to Conclude that No Reasonable Fact-Finder Could Find From the Summary Judgment Evidence That Plaintiff's Employment Was Terminated Because of Protected Activity</u>

In analyzing a claim for retaliation under Title VII, courts employ the <u>McDonnell Douglas</u>[4] burden-shifting analysis. <u>Byers v. Dallas Morning News, Inc.</u>, 209 F.3d 419, 427 (5th Cir. 2000). The TCHRA is pattered after Title VII, and therefore courts look to federal precedent in interpreting such statute. <u>Quantum Chem. Corp. v. Toennies</u>, 47 S.W.3d 473, 474 (Tex. 2001). To establish a <u>prima facie</u> case of retaliation, plaintiff must show: "(1) that [s]he engaged in activity protected by Title VII; (2) that [s]he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." <u>Byers</u>, 209 F.3d at 427. The employer must then "articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. "This burden is

---

[4]<u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973).

13

one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted). Once the employer does so, the burden falls to the plaintiff to show that the employer's reason is pretext for unlawful retaliation. Byers, 209 F.3d at 427.

It is undisputed that plaintiff made a sexual harassment complaint against Acuna through the company hotline and made a written complaint of such harassment as well. Plaintiff also contends that her statement to Warren was a protected activity. Plaintiff has pleaded that as a result of those activities, (1) her job performance was unfairly criticized, and (2) she was terminated, though her response to defendant's motion discusses only her termination as being the adverse employment action she suffered. "Adverse employment actions include only ultimate employment decisions, such as hiring, granting leave, discharging, promoting, or compensation." Ackel v. National Commc'ns, Inc., 339 F.3d 376, 382 (5th Cir. 2003). Plaintiff's conclusory claim of unfair criticism is not an adverse employment action for the purpose of Title VII, and therefore, her termination is the sole adverse employment action for the purposes of establishing her prima facie case.

Plaintiff was terminated on September 6, 2012. Her written sexual harassment complaint was dated July 10, 2012, Def.'s App. at 142, less than two months prior to her termination. Courts have held that time lapses of "up to four months ha[ve] been found sufficient to satisfy the causal connection for summary judgment purposes." Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001). Therefore, plaintiff has met her prima facie burden.

Defendant stated that its legitimate, non-discriminatory purpose in terminating plaintiff was that, because of previous performance, tardiness, and attendance issues, she was included in a reduction in force.

Plaintiff responded that she created a fact issue as to pretext by showing that: (1) two of the three counseling records were not signed or witnessed, and therefore there is a question as to their validity; (2) Warren denied involvement in the counseling record dated June 5, 2012, even though his name is typed on it; and (3) Warren denied that he discussed plaintiff's performance with Acuna while Acuna was his supervisor. In support of these fact issues, plaintiff presented a declaration signed by Warren. Pl.'s App. at 57-61. In his declaration, Warren stated that in June of 2012 he investigated certain records and determined that plaintiff had "better performance in

15

terms of productivity than the majority of the Collectors in the department." Id. at 59. He also stated that he told Miller and Rios in a meeting discussing the reduction in force, that plaintiff "was one of the better Collectors and was certainly better than some of the Collectors, [sic] who were being retained by the company [sic] Specifically Ashely Ramirez and Temetrice Tolliver and Ellie Valdez had lower productivity and worse attendance than [plaintiff]." Id. at 60. Both Miller and Rios dispute this meeting occurred. Lastly, Warren stated that he never disciplined or issued a counseling record to plaintiff while she was an employee with Innovate. Id. at 61.

The record in this matter is unclear on a number of points, including the validity of the unsigned counseling records, whether Rios relied upon the unsigned counseling records in making his decision to terminate plaintiff, whether Miller was involved in such decision, and who plaintiff's team leads were at any given point. Owing to this lack of clarity, the court is unwilling at this time to conclude that plaintiff's retaliation claims based on her termination of employment lack basis. However, the court will hear further from counsel on this subject during the pretrial conference.

16

VI.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted as to plaintiff's hostile work environment and sexual harassment claims and her retaliation claims based on unjust and unfair criticism of job performance, that those claims be, and are hereby dismissed, and that such motion be denied as to her retaliation claims based on her termination of employment.

SIGNED March 26, 2015.

_____
JOHN McBRYDE
United States District Judge

17